# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIE EARL CARTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THOMAS DART, SHERIFF OF COOK COUNTY**, **M.J. SALAZAR, SUPERINTENDENT, COOK COUNTY JAIL DIV. II AND VIII**, and **DAVID FAGUS, DIRECTOR OF CERMAK HEALTH SERVICES**, in their individual and official capacities, and **THE COUNTY OF COOK**, a municipal corporation, | ) ) ) ) ) ) ) ) | Case No. 09 CV 0956<br><br>Judge Robert M. Dow, Jr.<br><br>JURY TRIAL DEMANDED |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, WILLIE EARL CARTER (hereinafter "Mr. Carter" or "Plaintiff"), for his First Amended Complaint against Defendants THOMAS DART, SHERIFF OF COOK COUNTY, M.J. SALAZAR, SUPERINTENDENT OF COOK COUNTY JAIL DIVISIONS II AND VIII, DAVID FAGUS, DIRECTOR OF CERMAK HEALTH SERVICES, and THE COUNTY OF COOK (collectively, "Defendants"), states as follows:

### INTRODUCTION

1. For a period of nearly one year, Willie Earl Carter, a detainee awaiting trial in the Cook County Jail, was denied crucial medical care that he urgently needed as a result of his history of kidney disease and a kidney transplant operation. Mr. Carter had been convicted of no crime, but because he could not post $3,000 for a bond, he was committed to Defendants' custody and placed at the mercy of a health-care system so woefully inadequate that it has been

the subject of a nearly 200-page report by the Civil Rights Division of the United States Department of Justice. Through their willful, wanton, and reckless indifference to Mr. Carter's urgent and life-threatening medical condition, Defendants and/or individuals under their supervision and control violated Mr. Carter's rights under the Fourteenth Amendment to the United States Constitution. As a result of Defendants' misconduct and policies, Mr. Carter suffered extreme pain and mental anguish as well as possible permanent damage to his kidney. This lawsuit seeks redress under federal law for injuries caused by Defendants' misconduct and policies.

## The Parties

2. Plaintiff, Willie Earl Carter, is a United States citizen domiciled in Chicago in the Northern District of Illinois. He is currently incarcerated as a pre-trial detainee in the Cook County Jail.

3. On information and belief, Defendants Dart, Salazar, and Fagus are all employees of the County of Cook. Defendant Dart is the Sheriff of Cook County and oversees the Cook County Department of Corrections. Defendant Salazar is the Superintendent of Divisions II and VIII of the Cook County Jail. Defendant Fagus is the Director of Cermak Health Services, the division of the Cook County Bureau of Health Services that provides medical care to the inmates at Cook County Jail. The County of Cook is a municipal corporation located within the Northern District of Illinois.

## Jurisdiction and Venue

4. This Court has subject-matter jurisdiction over the claims in this case under 28 U.S.C. §§ 1331 and 1343(a)(3) because they arise under the United States Constitution and federal civil-rights laws.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all of the events giving rise to Mr. Carter's claims took place within the Northern District of Illinois.

## FACTUAL SUMMARY

### A. Plaintiff's Background and Medical History

6. Mr. Carter is a 60-year-old man who lived at 7315 South Eberhart Avenue in Chicago, Illinois, prior to his arrest and incarceration. Since January 2, 2007, Mr. Carter has been incarcerated as a pre-trial detainee in Division II of the Cook County Jail, located at 2750 South California Avenue in Chicago.

7. Mr. Carter has suffered from an array of severe medical problems for nearly thirty years, beginning with a diagnosis of diabetes in 1980. He has also been diagnosed with hypertension and hypercholesterolemia and has suffered attacks of gout. Most importantly, he has also suffered from severe kidney disease.

8. The combination of high blood sugar, high blood pressure, and high cholesterol is known as "metabolic syndrome." Prolonged elevated blood sugar damages the glomeruli, the blood-filtering capsules within the kidney that cleanse the blood and remove toxins. Thus, Mr. Carter's serious medical problems are interrelated and mutually reinforcing, requiring coordinated treatment.

9. Mr. Carter was steadily employed in a variety of manufacturing jobs from 1968 through 1992, when the Social Security Administration determined that he was disabled as a result of his severe kidney disease.

10. By 1997, Mr. Carter's kidney function had deteriorated to the point that he required a kidney transplant. Mr. Carter's only daughter, Tasha Carter, donated a kidney to her father, and he underwent a successful kidney transplant surgery in 1997 at Northwestern Memorial Hospital.

11.	As a result of his kidney disease and transplant surgery, Mr. Carter must receive specialized medical care and medication for the rest of his life. In addition to medications to control his diabetes, hypertension, and cholesterol, Mr. Carter must take anti-rejection medication every day in order to prevent his body from rejecting—and destroying—his sole functioning kidney.

12.	In addition to taking medication every day, Mr. Carter must have laboratory tests performed monthly to monitor his kidney function. He must also visit a nephrologist (a doctor specializing in kidney disease) every two months.

13.	For ten years, beginning in 1997 and ending with his incarceration, Mr. Carter maintained this regimen. This was so even though he was a person of limited means and had to travel from his home on the Southeast Side of Chicago to the pharmacy at Cook County/Stroger Hospital (on the West Side) to get affordable medications and Olympia Fields (a far southwest suburb) for bi-monthly checkups with his kidney specialist.

**B.	Plaintiff's Arrest and Denial of Prescription Medication**

14.	On January 2, 2007, Mr. Carter was arrested and admitted to Cook County Jail. As he was being processed for admission, Mr. Carter informed Cook County personnel repeatedly about his kidney disease and organ transplant and his urgent need to receive medication and care from a kidney specialist on a regular schedule.

15.	As part of the admissions process, Mr. Carter was evaluated by Cook County medical personnel. Mr. Carter informed the medical personnel of his kidney condition, his drug regimen, and his need to be treated by a kidney specialist. Mr. Carter also told them that his anti-rejection medication had to be taken on a daily basis.

16.	Even though Cook County personnel were well aware of Mr. Carter's condition and his urgent medical needs, including his need to take anti-rejection medication on a daily

4

basis, Mr. Carter did not receive any anti-rejection medication for over one week after his admission to Cook County Jail.

17. Mr. Carter repeatedly asked for his medication and reiterated that receiving his anti-rejection medication on a daily basis was a life-or-death matter. He was told by jail medical staff that he was not receiving the medicine because it was not available in the jail's pharmacy.

18. Mr. Carter was in possession of the anti-rejection medication at the time of his arrest and the medication was among his personal effects, which were being held by Cook County personnel. He informed the nurses that he had his anti-rejection medication in his personal property but was told that, in accordance with jail policy, they would not give the medication to him because it did not come from the jail's pharmacy.

19. The position taken by Cook County Jail and its medical staff placed Mr. Carter in an illogical and potentially deadly bind: they would not provide him with anti-rejection medicine because it was not in the jail pharmacy, and they would not allow him to take his own medicine, which was actually at the jail, because it did not come from the jail pharmacy. For over one week, this bureaucratic conundrum put Mr. Carter at risk of losing the life-saving kidney that had been donated by his only daughter, after ten years of scrupulous medical care to maintain the kidney.

20. As a result of the over-one-week delay in receiving his anti-rejection medication, Plaintiff suffered mental anguish as well as agonizing flank pain, decreased urine flow, and a painful sensation of bladder fullness. Defendants and/or individuals under their supervision and control acted wantonly and willfully, evincing a reckless and callous disregard for Mr. Carter's constitutional rights, through their deliberate indifference to his known, serious medical condition.

**C.     Denial of Kidney Specialist Care**

21.     As discussed above, due to his kidney disease and transplant, Mr. Carter will require the care of a kidney specialist for the rest of his life. He requires frequent laboratory testing and physical examination on at least a bi-monthly basis by a kidney specialist. Prior to his incarceration, Plaintiff was having lab work done once a month and visiting a kidney specialist bi-monthly.

22.     At the time of his admission to Cook County Jail in January 2007, and on many subsequent occasions, Mr. Carter made both oral and written requests to guards, nurses, and other medical and correctional personnel, asking to see a kidney specialist.

23.     Despite Mr. Carter's repeated requests, he still had not seen a kidney specialist by October 2007, ten months after his admission to Cook County Jail. As a result, Mr. Carter's kidney condition began to decline in the months following his incarceration.

24.     By October 2007, Mr. Carter was experiencing severe symptoms as a result of his untreated kidney disease, including extreme pain in his side, decreased urine production, urine discoloration, and inability to urinate. However, even after a doctor at Cermak Health Services recommended a visit to a kidney specialist, Mr. Carter was not taken to see a kidney specialist.

25.     In light of this apparent indifference to his still-worsening condition, Mr. Carter began filing official grievances in October 2007. After several grievances, he was finally taken to see a kidney specialist at Stroger Hospital. However, Cermak Health Services and the Cook County Jail failed to send any of his lab work to the hospital. Without lab work, the kidney specialist was unable to evaluate Mr. Carter's condition.

26.     The kidney specialist recommended that Mr. Carter have the missing lab work completed at the hospital. However, the Cook County Jail guards who were escorting Mr. Carter refused to take him for the tests. One guard stated that he would not take Mr. Carter to have tests

done because his shift was ending and he did not want to be late. Similarly, when Mr. Carter attempted to urinate and discovered that he was unable to do so, the guards refused to allow him to return to the doctor to ask for help, even though he was already at the hospital.

27. As a result of the deliberate indifference of Cook County personnel to his urgent and deteriorating medical condition, Mr. Carter was returned to the jail without being treated by the kidney specialist. The doctor at Cermak Health Services again stated that Mr. Carter needed to be treated by a kidney specialist at Stroger Hospital and ordered new lab tests. However, Mr. Carter was not allowed to return to Stroger Hospital again for approximately one week.

28. Throughout this time, Mr. Carter continued to experience agonizing side pain, difficulty urinating despite the urge to do so, and mental anguish caused by the knowledge that his sole functioning kidney could be lost as a result of his lack of appropriate medical care.

29. When Mr. Carter was finally taken back to the hospital in November 2007, his lab tests showed that his kidney function was very poor. Mr. Carter's condition was severe enough that he was admitted to the hospital for approximately one week for treatments that included ultrasound testing and a kidney biopsy.

30. As a result of Defendants' deliberate indifference to Mr. Carter's urgent and life-threatening need for medical care and reckless disregard for his well-being, Mr. Carter endured extended periods of severe pain and discomfort. Mr. Carter's kidney may have been irreversibly damaged as a result of the lengthy delay in receiving care. Defendants and/or individuals under their supervision and control behaved wantonly and willfully in denying Mr. Carter access to specialized kidney care for over ten months.

### COUNT I: DUE PROCESS VIOLATION - 42 U.S.C. § 1983 - INDIVIDUAL DEFENDANTS

31. Mr. Carter re-alleges and incorporates paragraphs 1-30 above.

32. The course of conduct described above was carried out by Defendants Dart, Salazar, and Fagus and/or individuals under their control acting with their approval or condonation. At all relevant times, Defendants Dart, Salazar, and Fagus and their subordinates were acting under color of state law within the scope of their employment by Defendant Cook County.

33. The course of conduct described above amounts to deliberate indifference to a known medical need that was both life-threatening and urgent. As such, the individual Defendants' conduct constituted a deprivation of Mr. Carter's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983. Because they acted with callous indifference to and disregard for Mr. Carter's federally-protected rights, the individual Defendants are liable for punitive damages.

34. As a result of the above-described violation of his constitutional rights, Mr. Carter suffered damages, including but not limited to physical pain, possible permanent medical harm, and mental anguish.

WHEREFORE, Plaintiff, Willie Earl Carter, respectfully requests the following relief:

(A) A judgment in Plaintiff's favor and against Defendants Dart, Fagus, and Salazar for compensatory damages arising out of the deprivation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, including damages for the past, current, and future physical injuries that Plaintiff has sustained or will sustain as a result of Defendants' conduct and the pain, suffering, and mental anguish Plaintiff suffered as a result of his mistreatment by Defendants;

(B) A judgment in Plaintiff's favor and against Defendants Dart, Salazar, and Fagus for punitive damages arising out of the egregious and inhumane treatment that Plaintiff endured as a result of their callous and reckless disregard for, and indifference to, his constitutional rights;

(C) A judgment in Plaintiff's favor and against Defendants Dart, Salazar, and Fagus in the amount of Plaintiff's costs, including witness fees, pursuant to 28 U.S.C. § 1920; and

(D) Any other relief that the Court deems just and appropriate.

## COUNT II: *MONELL* CLAIM AGAINST COOK COUNTY

35. Mr. Carter re-alleges and incorporates paragraphs 1-30 above.

36. The course of conduct described above was carried out by Defendants Dart, Salazar, and Fagus and/or individuals under their control acting with their approval or condonation. At all relevant times, Defendants Dart, Salazar, and Fagus and their subordinates were acting under color of state law within the scope of their employment with Defendant Cook County.

37. The course of conduct described above amounts to deliberate indifference to a known medical need that was both life-threatening and urgent. As such, Defendants' conduct constituted a deprivation of Mr. Carter's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, entitling him to sue under 42 U.S.C. § 1983.

38. In accordance with the principles announced in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and its progeny, Plaintiff alleges that Defendant Cook County is liable as a "person" under 42 U.S.C. § 1983 for the constitutional deprivation alleged above because Mr. Carter was deprived of his constitutional rights pursuant to the official policies or customs of Cook County.

39. As a result of the deprivation of his constitutional rights pursuant to official County policies or customs, Mr. Carter suffered damages, including but not limited to physical pain, possible permanent medical harm, and mental anguish.

WHEREFORE, Plaintiff, Willie Earl Carter, respectfully requests the following relief:

(A) A judgment in Plaintiff's favor and against Defendant Cook County for compensatory damages arising out of the deprivation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, including damages for the past, current, and future physical injuries that Plaintiff has sustained or will sustain as a result of Defendants' conduct and the pain, suffering, and mental anguish Plaintiff suffered as a result of his mistreatment by Defendants;

(B) A judgment in Plaintiff's favor and against Defendant Cook County in the amount of Plaintiff's costs, including witness fees, pursuant to 28 U.S.C. § 1920; and

(C) Any other relief that the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff, Willie Earl Carter, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) as to all issues so triable.

Dated: May 8, 2009

Respectfully submitted,

Willie Earl Carter

By: /s/ Jonathan Lahn
One of his attorneys

Jonathan C. Bunge, P.C. (ARDC # 06202603)
Marla Tun Conneely (ARDC # 6276076)
Jonathan Lahn (ARDC # 6293184)
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60654
Phone: 312-862-2000
Facsimile: 312-862-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2009, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following attorney, who has appeared in this case on behalf of all Defendants:

>Michael A. Kuczwara, Jr.
>Cook County State's Attorney's Office
>500 Richard J. Daley Center
>Chicago, IL 60602
>(312) 603-3233
>Email: mkuczwa@cookcountygov.com

    /s/ Jonathan Lahn