# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 956 | **DATE** | 4/18/2011 |
| **CASE TITLE** | Carter vs. Dart | | |

**DOCKET ENTRY TEXT**

Before the Court are (1) Defendants' motion to bifurcate and to stay discovery and trial as to Plaintiff's claims against Cook County under *Monell v. Department of Social Services*, 436 U.S. 658 (1976) [54] and Plaintiff's motion to take additional depositions [62]. For the reasons set forth below, the Court respectfully denies Defendants' motion to bifurcate and stay [54] and refers the motion to take additional depositions [62], along with all further discovery motions and supervision, to the calendar of Magistrate Judge Cox. The notice of motion date of 4/19/2011 is stricken and no appearances in the district court are required on that date; however, the case remains set for status in the district court on 5/12/2011.

■[ For further details see text below.]   Notices mailed by Judicial staff.

# STATEMENT

In this lawsuit, Plaintiff alleges that he was denied adequate medical treatment while he was incarcerated at the Cook County Jail and that this denial amounted to a deprivation of his rights under the Due Process Clause of the Fourteenth Amendment. Plaintiff claims that the individual Defendants are liable for this deprivation pursuant to 42 U.S.C. § 1983 because they, and/or individuals under their supervision acting with their condonation, encouragement, or acquiescence, acted under color of state law to deprive Plaintiff of his constitutional rights. Plaintiff further claims that Cook County is liable under 42 U.S.C. § 1983 because his rights were violated as a result of an official Cook County custom or policy. See *Monell v. Department of Social Services*, 436 U.S. 658 (1976).

Defendants have moved for bifurcation of Plaintiff's *Monell* claims and a stay of discovery and trial on those claims until the claims against the individual Defendants are resolved.

I. **Background**

The following allegations are taken from Plaintiffs' amended complaint [24]. Plaintiff is a 60-year-old man who has a variety of chronic illnesses that require special medical attention. Most seriously, Plaintiff has chronic kidney disease and he was the recipient of a kidney transplant in 1997. Plaintiff must take anti-rejection medication every day to prevent his body from rejecting the donated kidney. Additionally, Plaintiff alleges that he must have laboratory tests performed monthly to monitor his kidney function and that he must

| STATEMENT |
|---|

visit a nephrologist (a kidney specialist) every two months.

On January 2, 2007, Plaintiff was admitted to the Cook County Jail as a pretrial detainee. Plaintiff alleges that during his admission and thereafter, he told Cook County personnel of his health conditions and medical needs. Plaintiff alleges that he received no anti-rejection medication for more than one week following his admission to the jail. Plaintiff was told that the medication that he required was not available in the jail's pharmacy. Further, Plaintiff was told that he could not use the medication that he had with him at the time of his arrest, as doing so would be in violation of the jail's policies. Plaintiff alleges that he experienced pain and mental anguish during the period that he was without his medication.

Plaintiff further alleges that despite numerous requests and written grievances, over the next year, he was repeatedly denied access to a kidney specialist. Plaintiff alleges that by October 2007, he was experiencing severe symptoms as a result of his untreated kidney disease. Plaintiff was eventually taken to a kidney specialist at Stroger Hospital, but due to some of Defendants' conduct, he was not able to receive treatment. When Plaintiff was taken back to the hospital in November 2007, lab tests showed that Plaintiff's kidney function was poor. Plaintiff was admitted to the hospital for approximately one week for treatments that included ultrasound testing and a kidney biopsy.

As discussed above, Plaintiff has sued the individual Defendants for failing to provide him with constitutionally adequate medical care. In addition, Plaintiff has brought a *Monell* claim against Cook County. Through this claim, Plaintiff "seeks to establish * * * that specific policies and practices, including those for medication administration and the handling of medical grievances [at the jail] caused him to be denied urgent and necessary medical care." (Pl. Mem. at 5).

In his brief, Plaintiff asserts that discovery conducted to date has identified a number of jail policies or practices that caused or contributed to his injuries. According to Plaintiff, "by longstanding custom," the pharmacy at the jail "keeps no records of inventory on hand at any given time." *Id.* at 3. Plaintiff further alleges that "[t]here is no established procedure for providing inmates with medications that are not available in the pharmacy." *Id.* Further, Plaintiff takes issue with the jail's policy that forbade him from taking his own medication that he had with him at the time of his arrest. Plaintiff also argues that the jail's process for handling medical grievances is deficient and contributed to the violation of his rights. *Id.* at 3-4. For example, Plaintiff argues that the jail has a policy in place to never treat medical grievances as emergencies. *Id.* Plaintiff asserts that his *Monell* claims are "no mere fishing expedition" (*id.* at 6 n. 10), pointing to a July 11, 2008 report in which the U.S. Department of Justice Civil Rights Division addressed conditions at Cook County Jail and found, among other things, "numerous systemic problems with medication administration and management." (See Pl. Ex. F, at 50). Plaintiff notes that the D.O.J. reported, among other things, a May 2007 incident in which another kidney transplant recipient was denied his anti-rejection medications for 16 days after which his body began to reject the donor kidney, resulting in his hospitalization. *Id.* at 51-52.

II.     Analysis

   A.     **Motion to Bifurcate**

Federal Rule of Civil Procedure 42(b) authorizes federal courts to order a separate trial of one or more separate issues or claims if separation (or bifurcation) is warranted "[f]or convenience, to avoid prejudice, or to expedite and economize." Bifurcation may be appropriate if one or more of the Rule 42(b) criteria is met. See, *e.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). District courts approach bifurcation

motions with a pragmatic mindset, and the district court's exercise of its "'considerable discretion to order the bifurcation of a trial'" will be set aside on appeal "'only upon a clear showing of abuse.'" *Id.* at 364-64 (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)). Similarly, Federal Rule of Civil Procedure 26(d) permits a court to stay discovery on *Monell* claims. F.R.C.P. 26(d); *Jones v. City of Chicago*, 1999 WL 160228, at *3 (N.D. Ill. March 10, 1999).

Defendants argue that bifurcation is appropriate in this case because (1) Plaintiff must prove that he suffered a constitutional violation before the County could ever be found liable; (2) causing the County to answer discovery on Plaintiff's "broad [*Monell*] claims" would be expensive and burdensome for the County; and (3) the *Monell* claims would not provide Plaintiff with any additional compensatory damages and thus will "yield no monetary benefit to Plaintiff," as the County would be footing the bill for a judgment against any of the individual Defendants. See 745 ILCS 10/9-102.

This Court recently considered whether to bifurcate a *Monell* claim in a materially similar case involving the County. *Terry v. Cook County Dep't of Corrections,* 2010 WL 2720754 (N.D. Ill. July 8, 2010). In *Terry*, the Court noted that motions to bifurcate *Monell* claims have become commonplace. *Id.* at *1. The Court further noted that "there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases" (*Id.* quoting (*Elrod v. City of Chicago*, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007))), with the result in each instance "reflect[ing] a case-specific assessment of the advantages and disadvantages of bifurcation." *Id.* (quoting *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008)). Recognizing that each case must be evaluated on its own merits, this Court has both granted and denied motions to bifurcate filed by municipal defendants. Compare *Terry,* 2010 WL 2720754 (denying motion to bifurcate) with *Cruz v. City of Chicago*, 2008 WL 5244616 (N.D. Ill. Dec. 16, 2008) (granting motion to bifurcate).

After carefully considering the particular circumstances of this case and each of Defendants' arguments, the Court concludes that bifurcation is not warranted at this time.

Defendants recognize that after the Seventh Circuit's decision in *Thomas v. Cook County Sheriff's Dept*., 604 F.3d 293, 305 (7th Cir. 2010), "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." Defendants do not argue that this is the sort of case where liability on the County will inexorably be tied to liability on the individual defendants. See *id.;* see also (Def. Reply at 2 ("Defendants' motion * * * does not contend that if there is no individual liability then there can be no *Monell* liability.") Instead, Defendants argue that a common element of the claims against the County and the individual Defendants is proving that a violation of Plaintiff's constitutional rights in fact occurred. This is undoubtedly true. See, *e.g. Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992) ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.")). However, the fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element (and will be subject to common defenses) is not sufficient to justify bifurcation. Such an argument is available to municipal defendants in *every* case involving a *Monell* claim—accepting Defendants' argument here would be akin to establishing a *per se* rule in favor of bifurcation of such claims.

Defendants also argue, in essence, that Plaintiff's *Monell* claim is worth little to him, as success on this claim would not provide Plaintiff with any additional compensatory damages. See 745 ILCS 10/9-102. [FN 1]. Even if that is true, many courts have recognized that a plaintiff has the right to select the claims that he

| STATEMENT |
|---|

wishes to pursue, and that even if pursuing a *Monell* claim may have minimal pecuniary reward, the potential to deter future official misconduct is itself "a proper object of our system of tort liability." *Cadiz v. Kruger*, No. 06-cv-5463, Memorandum Opinion and Order, at 11, 16 (N.D. Ill. Nov. 29, 2007); see also *Ojeda-Beltran*, 2008 WL 2782815, at *4 ("there are non-economic benefits that can be obtained through suing the City that are unavailable through the suit of Defendant Officers"); accord *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896-97 (N.D. Ill. 2000).

> [FN1] Plaintiff does not quibble with Defendants' argument that Plaintiff would receive the full measure of his damages even without a judgment against the County. Regardless, the Court notes that the County has not offered to enter into a stipulation whereby it would agree to an entry against it for compensatory damages should its employees be found individually liable, see, *e.g. Cruz*, 2008 WL 5244616, at *2 & n.1, as is common in these sorts of cases.

The crux of Defendants' motion is that responding to Plaintiff's discovery requests would "place undue, unnecessary and costly burdens upon all the Parties and this Court." (Def. Mot. at 4). The Court is cognizant of Defendants' concern. In fact, the spate of bifurcation motions and the willingness of many judges to grant them stems in large part from the recognition that, in many instances, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007); see also *Ojeda-Beltran*, 2008 WL 2782815, at *2 (noting that litigating plaintiffs' *Monell* claim will be a "more burdensome and time-consuming task" than litigating plaintiffs' claims against the individual officer defendant).

However, judges in this district have echoed Plaintiff's concerns about delay of the case and possible prejudice to Plaintiff from that delay. *Terry*, 2010 WL 27720754, at *2. While discovery in this case is nowhere near complete – indeed, Plaintiff seeks leave to depose more than two dozen witnesses [see 62] – the various jail policies and practices identified by Plaintiff suggest that there may be a colorable, independent basis for liability against the County. See *Thomas*, 604 F.3d at 305 ("[T]o determine whether the County's liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth."). Accordingly, the Court does not see why Plaintiff should not be permitted to proceed immediately to discovery and possible trial on this claim.

Furthermore, all of the time and effort that Defendants submit will be saved in discovery, trial preparations, and trial time remains speculative. If the Court were to follow Defendants' proposed schedule, there might be a need for two rounds of discovery, two trials to prepare for, and two trials that would include much redundant evidence. Such a result would excessively prolong this case and would not serve judicial economy. See, *e.g.*, *Cadiz,* 2007 WL 4293976, at *5 (stating that "a stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date").

In denying the motion for bifurcation, the Court is cognizant that Defendants will be required to disclose documents, and possibly submit to depositions, related to several types of policies that were maintained by the County. However, to the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary. See *Wilson v. City of Chicago*, 2008 WL 4874148, at *2 (N.D. Ill. July 24, 2008) (finding that court had no reason to believe that a plaintiff's *Monell* discovery would be a fishing expedition and was narrowly tailored where the plaintiff alleged that the defendant's training procedure was deficient in a specific way). To facilitate the taking of all further discovery in this case – both *Monell* and non-*Monell* – in the most efficient fashion, the Court refers

| STATEMENT |
|---|

the case to the calendar of Magistrate Judge Cox for all further discovery supervision and discovery motions, including Plaintiff's motion to take additional depositions [62].

### III. Conclusion

For the reasons stated above, Defendants' motion to bifurcate and to stay discovery and trial as to Plaintiff's claims against Cook County under *Monell v. Department of Social Services*, 436 U.S. 658 (1976) [54] is respectfully denied and Plaintiff's motion to take additional depositions [62] is referred, along with all further discovery motions and supervision, to the calendar of Magistrate Judge Cox.